**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

V. SUAREZ & CO., INC,

Petitioner,

v.

BACARDI INTERNATIONAL LIMITED, et al.,

Respondents.

Consolidated cases:
Civil No. 11-1858 (GAG)
Civil No. 11-1871 (GAG)

**OPINION AND ORDER**

On August 5, 2011, petitioner V. Suarez & Co., Inc. ("VSI" or "Plaintiff") filed an action against Bacardi International Limited ("BIL"), Bacardi Corporation ("BC") and Bacardi Caribbean Corporation ("BCC") (collectively "Defendants") pursuant to P.R. Laws Ann. tit. 32, §§ 3222 and 3224 in the Puerto Rico Court of First Instance seeking to set aside a final, partial arbitration award. (See Docket No. 1-1 at 1-2.) On September 1, 2011, filed a notice of removal with this court (Docket No. 1). On September 2, 2011, BIL filed an action in federal court seeking to confirm and enforce that arbitration award in its favor pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. (See Civil No. 11-1871, Docket No. 1.) On September 20, 2011, Civil No. 11-1871 was consolidated with the present case because both involved the same disputed arbitration award. (See Civil No. 11-1871, Docket No. 15.) After consolidation, VSI filed two motions on September 29, 2011. The first was a motion to remand Civil No. 11-1158 (Docket No. 25). The second was a motion to dismiss Civil No. 11-1871 for lack of subject matter jurisdiction (Docket No. 26). After reviewing the parties submissions and applicable laws regarding the two motions, the court **GRANTS** Petitioner's motions.

**I.  Factual and Procedural Background**

At this juncture, the court is only concerned in deciding whether the court has subject matter

**Civil Nos. 11-1858 & 11-1871 (GAG)**

jurisdiction over the cases.[1]  The citizenship of the parties is not in dispute.  Plaintiff is a citizen of Puerto Rico as it is incorporated and has its principal place of business in Puerto Rico.  (See Docket No. 35 at ¶ 1.)  BIL is a foreign corporation that is both incorporated and has its principal place of business in Bermuda.  (See Docket Nos. 35 at ¶ 4; 1 at ¶ 6.)  BC and BCC are both incorporated in Puerto Rico and have their principal places of business in Puerto Rico.  (See Docket Nos. 1 at ¶ 5; 35 at ¶¶ 2-3.)

In 2004, BCC and VSI began negotiations for VSI to become the exclusive local subdistributor for BCC's alcoholic products in Puerto Rico.  (See Docket No. 31-1.)  Angel Torres, President of BCC, and Diego Suarez, Jr., President and CEO of VSI, signed a subdistribution agreement on August 2, 2004, allowing VSI to become the exclusive subdistributor of specific brands and sizes of alcoholic beverages in Puerto Rico.  (See Docket No. 2-3.)  There were no other signatories to the agreement, but BIL is listed and described as an entity, "engaged in the business of selling, promoting, and distributing certain beverage alcohol products worldwide."  Id.  The agreement states BC, "is engaged in the business of producing and selling certain beverage alcohol products within Puerto Rico and the U.S. Virgin Islands."  Id.  The agreement also states BIL and BC duly consented to the agreement between BCC and VSI, however neither company was a party or signatory to the agreement.  Id.  On April 1, 2006, BCC merged with Castleton Holdings, which, minutes later merged with BC.  (See Docket No. 1-6.)  The result being that BC became responsible for all of BCC's responsibilities and obligations.  (See Docket No. 1 at ¶ 20.)  BC and BIL are both subsidiaries of Bacardi Limited.  (See Docket Nos. 13-14.)

On May 29, 2009, BC informed VSI it would not renew the subdistribution contract and would seek arbitration in order to resolve any disputes regarding the termination of the agreement.

---

[1] In considering a motion to dismiss for lack of subject matter jurisdiction, the court may construe the complaint liberally, and may consider whatever evidence has been submitted in order to determine its ability to adjudicate the case.  See Carroll v. U.S., No. 10-1152, 2011 WL 5220313, at *2 (1st Cir. Oct. 31, 2011).

**Civil Nos. 11-1858 & 11-1871 (GAG)**

(See Docket No. 27-28.) Defendants sought arbitration on October 10, 2009, and VSI responded by claiming that certain provisions were null and void pursuant to the local laws of Puerto Rico. (See Docket No. 27-29; 1-1 at ¶ 4.) At the request of Defendants, the arbitration proceedings were bifurcated with the initial stage resolving the validity of sections 9.4(d) and 9.5 of the subdistribution agreement and the second stage, if necessary, to resolve any damages. (See Docket No. 27-33; Civil No. 11-1871, Docket No. 1.) On July 19, 2011, the arbitration tribunal agreed with Defendants regarding bifurcation and decided the subdistribution agreement was valid under Puerto Rico law. (See Docket No. 1-9.) VSI filed a special proceeding in the local court seeking to vacate the arbitration tribunal's findings and this removal followed shortly thereafter. On September 2, 2011, BIL filed a separate suit seeking to confirm the arbitration tribunal's decision.

**II.    Discussion**

Federal courts are courts of limited jurisdiction and cannot hear cases for which they do not have subject matter jurisdiction. See Am. Fiber & Finishing v. TYCO Healthcare Grp., LP., 362 F.3d 136, 138-39 (1st Cir. 2004). Both cases, although consolidated for judicial convenience, must be analyzed separately in order determine whether the court has subject matter jurisdiction to adjudicate the case. See Narragansett Indian Tribe of R.I. v. Rhode Island, 296 F. Supp. 2d 153, 159 (D.R.I. 2003) (reversed on other grounds). As there is no federal question in the case at bar and because the FAA confers standing, not subject matter jurisdiction, the only manner in which this court could have subject matter jurisdiction over these cases is by diversity of citizenship. See Templeton Bd. of Sewer Com'rs v. Am. Tissue Mills of Mass., Inc., 352 F.3d 33, 38 (1st Cir. 2003) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). Federal courts have subject matter jurisdiction over diversity cases when there is both complete diversity between the plaintiffs and the defendants**,** and the amount in controversy is met. 28 U.S.C. § 1332(a); See Am. Fiber & Finishing, 362 F.3d at 139.

    **A.    Amount in Controversy**

In addition to diversity of citizenship, the damages claim must be in excess of $75,000

**Civil Nos. 11-1858 & 11-1871 (GAG)**

exclusive of interest and costs.  See 28 U.S.C. § 1332(a); Exxon Mobil Corp. v. Allapattah Serv's, Inc., 545 U.S. 546, 551 (2005).  The party asserting federal jurisdiction has the burden of demonstrating federal jurisdiction.  See Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328, (1st Cir. 2000).  Typically, the amount sought in the complaint controls the amount in controversy analysis, unless it is shown to a legal certainty that the amount of recovery will be $75,000 or less.  See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938); Esquilin-Mendoza v. Don King Prods., Inc., 638, F.3d 1, 4 (1st Cir. 2011) ("[L]egal certainty that the claim is really for less than the jurisdictional amount trumps the plaintiff's good faith in claiming for a larger amount.") (internal quotations omitted).  The court notes a lack of controlling precedent to determine what the amount in controversy is in a bifurcated arbitration, when damages will be decided in the latter stage of the arbitration.  However, the First Circuit has stated in *dicta* that the total amount sought through the entire arbitration should be controlling for jurisdictional purposes.  See id. at 329 (noting issue of appeal to partial damage award in bifurcated arbitration brought under FAA, but not resolving the issue).  In Bull HN Info. Sys., the First Circuit stated the purpose for arbitration was to allow for simple and expedited proceedings between the parties.  Id.  If the court only considers the amount of the partial judgment, then the court would not have jurisdiction over the case because the amount in controversy would not be met.  Id.  However, if the parties did not submit to a bifurcated arbitration and the entire claim was arbitrated at the same time, the court would have jurisdiction because all damages would be included within the arbitration award.  In effect, this would, "impose a penalty – loss of federal jurisdiction – on the use of procedural devices such as bifurcation, devices meant only to simplify and expedite the process." See Bull HN Info. Sys., 229 F.3d at 329.  To protect the rights of those who choose arbitration, the court finds the better rule is to consider the damages for the entire arbitration process in order to determine subject matter jurisdiction.

Applying this rule to the two cases at hand, the court finds the amount in controversy has been met.  The current removed case and enforcement request only deal with the enforceability and

4

**Civil Nos. 11-1858 & 11-1871 (GAG)**

the validity of the subdistribution agreement. (See Docket No. 1 at ¶ 29.) In the complaint filed in the local court, Plaintiff claims damages in excess of $30,000,000. (See Docket No. 1-1 at ¶ 4.) Defendant does not dispute the damages sought are in excess of $75,000. However, upon removal of the case by Defendants, Plaintiff argues the court lacks subject matter jurisdiction due to an insufficient amount in controversy. (See Docket No. 35 at 21.) The issue of damages has not reached the arbitration panel because the parties chose to bifurcate the arbitration. However, the amount in damages sought at the end of arbitration exceeds $75,000. Pursuant to the previous discussion, this court holds the better rule is to use the amount in controversy for the entire arbitration for jurisdictional purposes. In this case, the amount sought by Plaintiff is $30,000,000. Therefore, as the amount sought in the complaint controls unless shown to a legal certainty to be less, the amount in controversy has been met.

### B.    Diversity of Citizenship

Generally, the court analyzes all parties to an action in order to determine diversity of citizenship of all parties. But the court must disregard nominal or formal parties in an action when evaluating diversity of citizenship for jurisdictional purposes. See Navarro Sav. Ass'n. v. Lee, 446 U.S. 458, 560-61 (1980). All properly joined parties in interest, but not those parties that are merely nominal, must be analyzed for diversity purposes. See Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 n.8 (3d Cir. 1980) (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3642, at 149 (2d ed. 1985)) (stating court must include all proplery joined parties, not just those considered indispensable). Additionally, whether related corporations or subsidiaries must be joined is fact specific. See 25 Fed. Proc., Lawyer'd Ed. § 59.122 (2011) (stating a subsidiary corporation is an indispensible party when the subsidiary was the, "primary participant in the events giving rise to the cause of action.").

As master of his complaint, the plaintiff has the right to join or omit parties in order to determine the forum for their case. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). As long as the claims are real and the parties are not nominal, the citizenship of each named defendant

**Civil Nos. 11-1858 & 11-1871 (GAG)**

must be analyzed in order to determine diversity. See Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000). Federal Rule of Civil Procedure 19(b) governs the instances when a required party is not joined in the present litigation, and joinder of the required party would divest the court of subject matter jurisdiction. See FED.R.CIV.P 19(b). When analyzing whether a party is indispensable under Rule 19(b), the court should keep in mind the underlying policies of the rule, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) (quoting Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)). With this policy as a backdrop, Rule 19(b) dictates the four factors the court should consider to determine, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED.R.CIV.P. 19(b); see Picciotto, 512 F.3d at 16. The four factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id. The two cases will be discussed separately because different parties are involved in each action and because the two actions differ in nature.

### 1.    Civil No. 11-1858

In this case removed from the local court, VSI sued three defendants, two of whom are citizens of Puerto Rico. Defendant BIL asserts that because BIL is the only real party in interest and because BC and BCC are not indispensable parties, only the citizenship of BIL should control for jurisdictional purposes. The presence of BC and BCC destroys subject matter jurisdiction, therefore, unless they are deemed nominal or formal, the court must remand the case to the local court.

While BCC no longer exists as a corporate entity, suit against BCC may still be proper. See Yezzi v. Hawker Fin. Corp., 09-0537, 2009 WL 4898380, at *4 (S.D. Ala. Dec. 14, 2009) (stating,

**Civil Nos. 11-1858 & 11-1871 (GAG)**

"[i]n general, the dissolution of a corporation does not necessarily make suit against it improper.") Pursuant to Federal Rule of Civil Procedure 17(b)(2), the capacity of a corporation to sue or be sued shall be determined by the laws of the jurisdiction in which it was organized. See FED.R.CIV.P. 17(b)(2); Balogh v. Chevy's Int'l, Inc., 89 Civ. 8193, 1990 WL 74531, at *2 (S.D.N.Y. May 31, 1990) (stating New York law allows dissolved corporation to be sued two years after dissolution). In Puerto Rico, a corporation may be sued for three years after its dissolution. See P.R. Laws Ann. tit. 14 § 3708. Section 3708 states, "With respect to any action, suit, or proceeding . . . against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, the corporation shall, solely for the purpose of such action, suit, or proceeding, be continued as a body corporate beyond the three (3) year period and until any judgements, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of First Instances of Puerto Rico." Id.

In the present case, BCC merged into Castleton Holdings in April 1, 2006, effectively dissolving the corporation. Pursuant to P.R. Laws Ann. tit. § 3708, BCC remained open to suit until April 1, 2009, three years after the merger. In the present case, suit against BCC is improper because it is beyond the three year statutory period. Therefore, the court will not consider BCC as a party in interest in order to determine diversity of citizenship.

Therefore, the only remaining party that destroys complete diversity is BC. BC, as the successor in interest of BCC, was a signatory of the subdistribution agreement. BC was the entity negotiating and delegating its right to VSI. While BIL consented to the appointment of VSI, it was BC that was responsible for contract negotiations and actually closing the deal with VSI. BCC's representative was present for the deal, but no representative from BIL attended. As such, BC is not a nominal party to the contract. See 25 Fed. Proc., Lawyers Ed. § 59:122 (stating an affiliated corporation must be joined in an action when the subsidiary was the, "primary participant in the events giving rise to the suit."); Dernick v. Bralorne Res., Ltd., 639 F.2d 196, 198 (5th Cir. 1981) (stating failure to join subsidiary, who was primary participant in events giving rise to lawsuit, would

**Civil Nos. 11-1858 & 11-1871 (GAG)**

be improper). Additionally, BC is the entity that will be liable to VSI for any damages due to the termination of the contract without just cause. See Scottsdale Ins. Co., v. Bridges, LLC, Case No. 08-11033, 2009 WL 799467, at *2-3 (D. Mass. Mar. 25, 2009) (holding entity that contracted for bridge construction and would be liable for damages to the bridge during construction, is not nominal party). VSI does not bear the burden of demonstrating that BC is an indispensable party for this particular case. It is sufficient that VSI, as plaintiff and master of the complaint, chose to sue BC and that BC is a real party to the action because they were the primary participant in the contract giving rise to this suit. VSI's inclusion of BC in this case is proper and BC's interest in the litigation is real.

Therefore, the citizenship of BC must be included in the jurisdictional analysis. It is uncontested that BC is a citizen of Puerto Rico and as such divests the court of subject matter jurisdiction to hear this case. The court must **GRANT** VSI's motion to remand to the Puerto Rico Court of First Instance.

### 2. Civil No. 11-1871

BIL, as the plaintiff in the second case, chose to sue VSI without any other plaintiffs. Because all named parties are diverse in this case, there is no diversity issue. The issue in this case is whether BIL must join BC as a plaintiff in order to adequately adjudicate the claims of action. As previously discussed, the court follows a four factor test to determine whether BC is an indispensable party and must be joined in order for the case to continue. It is important to note, the court, in applying the four factors of Rule 19(b), should not adhere to a bright-line rule that all parties to a contract are indispensable. See CP Solutions PTE, Ltd., v. Gen. Elec. Co., 553 F.3d 156, 160 (2d Cir. 2009).

#### i. Judgment in BC's Absence

VSI asserts BC would be adversely effected by adjudication of the current case because at the next stage of the bifurcated arbitration, VSI would be able to seek damages directly from BC.

**Civil Nos. 11-1858 & 11-1871 (GAG)**

BIL counters by arguing that BC has no interest at the current juncture of litigation because BC's rights will only be implicated at a later stage of the arbitration dealing with just cause. Both sides agree that when the arbitration continues to its later stages, BC's interests will be implicated. An adverse judicial opinion would expose BC to significant financial losses. BIL argues that as the corporation that maintains the rights to the Barcardi brand, BIL will end up paying any award against BC. But that does not mean BC will not be prejudiced by not being a part of the litigation seeking to enforce the underlying contract. BC is not a wholly owned subsidiary of BIL and BIL is not the parent company of BC. Contra Pujol v. Shearson/Am. Exp., Inc., 877 F.2d 132, 135 (1st Cir. 1989) (finding no prejudice to subsidiary when parent company is present and will adequately represent subsidiaries needs). BC, not BIL, is the party that contracted with VSI. BC is the principal actor in the contract that allows for arbitration. Not joining the corporation that was the primary participant would be improper. See Dernick, 639 F.2d at 199. The court finds that BC's interests are implicated in the current suit to enforce the partial arbitration award and failure to join BC could have an adverse effect if BC is not present to protect its interests.

### ii. Prejudice to be Lessened or Avoided

The second factor requires the court to entertain other measures and provisions that would help alleviate any prejudice born unto BC because of BC's absence from the case. The court can think of none. In this case, it is BC who has the rights and responsibilities that accompany the contract. Any judgment denying the enforcement of the partial arbitration award would necessarily impact BC in the later stages of arbitration. The court cannot create a remedy that does not bind BC because BC is the only signatory to the contract. The potential prejudice to BC is that BC would be liable to VSI for damages if it did not have just cause to terminate the contract. Even though BIL claims it would ultimately pay any damages award, BC would still be the legally responsible party. Given this potential prejudice, the court cannot manipulate any judgment or relief that, in terms of the arbitration award, does not effect BC.

### iii. Adequate Judgment in BC's Absence

9

**Civil Nos. 11-1858 & 11-1871 (GAG)**

This factor encapsulates more than simply whether relief can be shaped that satisfies the parties, it includes the interest of the courts and the public. See Picciotto, 512 F.3d at 18. "[T]here remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Provident Tradesmens Bank & Trust Co., v. Patterson, 390 U.S. 102, 111 (1968). The similarity between the claims in the consolidated cases demonstrates that both claims should be adjudicated together and the same time. Judicial resources, as well as the resources of the parties, will be conserved by adjudicating these matters together. The parties have not yet wasted resources because at this juncture, the case has only been pending for roughly three months and has not entered into the discovery or trial phases of litigation. See CT Solutions, 553 F.3d at 160 (stating dismissal after two years of litigation would be wasteful of the parties and judicial resources). Remanding the case to the local court will better meet the interests of the courts and the public. See id.

### iv.    Existence of Alternative Adequate Remedies

The final prong requires the court to consider whether the plaintiff would have an adequate remedy if the suit is dismissed. Much like Picciotto, the court notes the availability of the local court for all present claims to be adjudicated. See Picciotto, 512 F.3d at 19. BIL correctly points out and asserts that the FAA creates standing for BIL to bring this action to enforce the partial arbitration award. However, the FAA does not confer jurisdiction for federal courts to hear the action, jurisdiction must be independently shown. See Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82 (2008). BIL has the ability to bring this same action in the local court. But see Prescription Plan Serv's v. Franco, 552 F.2d 493, 497 (2d Cir. 1977) (holding mere existence of state court forum insufficient to dismiss case). No rights, other than the right to bring these claims in federal court, are truncated by asserting these courts at the local level. By asserting these claims in the local court, all claims may be litigated at once, allowing the full range of issues to be litigated and foreclosing the possibility of conflicting decisions between the federal and local courts. See Gonzalez v. Cruz, 926 F.2d 1, 6 (1st Cir. 1991) (holding adjudication of all claims in one court is preferable when Commonwealth action is pending and no prejudice has been shown).

**Civil Nos. 11-1858 & 11-1871 (GAG)**

On the whole, these factors favor the finding of BC as an indispensable party. Therefore, the court **GRANTS** VSI's motion to dismiss for lack of subject matter jurisdiction.

### IV.     Conclusion

For the abovementioned reasons, the court **GRANTS** VSI's Motion to Remand Civil No. 11-1858 (Docket No. 25). The court **GRANTS** VSI's Motion to Dismiss Civil No. 11-1871 (Docket No. 26).

**SO ORDERED.**

In San Juan, Puerto Rico this 5th day of December 2011.

                                              S/Gustavo A. Gelpí

                                              GUSTAVO A. GELPI

                                              United States District Judge